**IN THE COURT OF APPEALS OF IOWA**

No. 20-1378
Filed February 3, 2021

**IN THE INTEREST OF A.M., J.M., N.M., A.M., A.M., D.M., and J.M.,
Minor Children,**

**D.M., Father of J.M., A.M., and J.M.,**
    Appellant,

**A.M., Father of A.M., N.M., and A.M.,**
    Appellant,

**E.L., Mother,**
    Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lynn Poschner, District

Associate Judge.


        The mother of all seven children and the two biological fathers of the six

youngest children appeal the juvenile court's order terminating their parental rights.

**AFFIRMED ON ALL THREE APPEALS.**


        Barbara O. Hoffman, Des Moines, for appellant father D.M.

        Jamie F. Deremiah of Flanagan Law Group, PLLC, Des Moines, for

appellant father A.M.

        David Barajas of Macro & Kozlowski, LLP, West Des Moines, for appellant

mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Arielle M. Lipman, West Des Moines, guardian ad litem for all minor children and attorney for A.M., J.M., and J.M.

Ryan R. Gravett, Clive, attorney for minor child A.M.

Charles Fuson of Youth Law Center, Des Moines, attorney for minor child N.M.

Michael A. Horn, Des Moines, attorney for minor child A.M.

Randall L. Jackson, Des Moines, attorney for minor child D.M.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

In the cases underlying these appeals, the juvenile court terminated the parental rights of all parents of the seven children involved pursuant to Iowa Code chapter 232 (2020). All seven children have the same mother, and there are three biological fathers. The following table lists the children along with their birth order, ages at the time of the termination hearing, and their fathers:

| Birth Order | Child | Age | Father |
|---|---|---|---|
| 1 | Da.M | 12 | Father Da.M |
| 2 | Na.M | 11 | Father A.M |
| 3 | Aa.M | 10 | Father A.M. |
| 4 | An.M | 9 | Father A.M. |
| 5 | Av.M | 5 | Father De.M. |
| 6 | Jaz.M | 3 | Father De.M. |
| 7 | Jak.M | 2 | Father De.M. |

As noted, the parental rights of the mother and all three fathers were terminated. The mother, Father A.M., and Father De.M. appeal. Father Da.M. does not appeal.

## I. Factual and Procedural Background

In 2013, the mother and Father A.M., who lived in Illinois at the time, ended their relationship. Father A.M. last had contact with the children in 2016. Father A.M. was incarcerated for a large portion of these proceedings. At the time of termination, Father A.M. lived with his mother in Missouri.

In 2017, the mother, Father De.M., and the six oldest children moved from Illinois to Iowa.[1] The family[2] was initially homeless upon arrival in our state. The Iowa Department of Human Services (DHS) became involved with the family after

---

[1] The youngest child had not been born yet when the family moved to Iowa.
[2] Unless otherwise noted, the "family" refers to the mother, Father De.M., and the children. Throughout these proceedings, the children were in the care of the mother and Father De.M. until removal. Also, unless otherwise noted, "parents" refers to the mother and Father De.M.

the mother failed to address her mental-health issues, failed to ensure the children received needed medication, and failed to seek proper medical treatment for a cut on An.M.'s foot. Upon further involvement with the family, it was discovered Na.M. had serious mental-health issues. Concerns over the parents' ability to supervise the children, the mother's mental-health issues, and Na.M.'s mental-health issues resulted in Na.M. being removed from the home and placed in DHS custody in December 2018 and all seven children[3] being adjudicated children in need of assistance.

The six children besides Na.M. initially remained in the parents' care. However, in April 2019, An.M. was removed from the parents' care and placed in DHS custody due to his ongoing mental-health struggles, his behavior at school, indications he had suffered physical abuse, and his homicidal threats directed at others.

In June 2019, the other five children were removed from the parents' care and placed in DHS custody due to the children's behavioral and mental-health issues, the parents'[4] failure to address the issues, the parents' failure to properly supervise the children, the parents allowing a man to live in the house who sexually assaulted Da.M., the parents' failure to obtain needed medical (including mental-health) treatment for the children, the parents' sleeping excessively instead of caring for the youngest children, and the filthy condition of the home.

---

[3] By this time, the youngest of the seven children had been born.
[4] At this time and continuing through the termination hearing, the mother and Father De.M. resided together.

By the time of a subsequent review, Na.M. and An.M. each had been placed in a psychiatric medical institution for children (PMIC) and the other five children were in foster care. Due to the lack of progress by the parents, the children remained in those placements. Subsequent permanency hearings resulted in the parents being granted a six-month extension to work toward reunification with Na.M. and An.M. as those children completed their PMIC programs. A permanency hearing was scheduled regarding the other five children but was not held independently due to the State filing petitions seeking termination of parental rights. The permanency hearing was held in conjunction with the termination hearing.

Following a hearing, the juvenile court terminated the rights of all parents. The mother, Father A.M., and Father De.M. appeal. Additional facts will be addressed as needed in relation to the issues raised by the parents on appeal.

## II.    Standard of Review

"We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III.    Analysis of the Issues Raised by the Parents

The mother and the two appealing fathers raise multiple issues. We will address the issues raised by each appealing party in turn.

### A.      The Mother

The mother raises two issues.[5]

### 1.      Statutory Grounds

The mother's parental rights to the five oldest children were terminated pursuant to Iowa Code section 232.116(1)(f),[6] and her rights to the two youngest children were terminated pursuant to Iowa Code section 232.116(1)(h).[7]  The mother does not dispute the first three elements of either paragraph.  She

---

[5] Although the mother's petition on appeal makes reference to a challenge to the juvenile court's finding that termination was in the children's best interest, she makes no argument and cites no authority in support of this contention.  Therefore, we do not consider it.  *See State v. Gibbs*, 941 N.W.2d 888, 902 (Iowa 2020) (McDonald, J., concurring specially) (collecting cases describing ways issues can be waived on appeal, including failing to make an argument in support of an issue and failing to make more than a perfunctory argument); *see also* Iowa R. App. P. 6.1401–Form 5 (requiring "supporting legal authority" for each issue presented).

[6] Iowa Code section 232.116(1)(f) permits the juvenile court to terminate a parent's rights if it finds:
>      (1)    The child is four years of age or older.
>      (2)    The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>      (3)    The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>      (4)    There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[7] Iowa Code section 232.116(1)(h) requires proof of the following:
>      (1)   The child is three years of age or younger.
>      (2)   The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>      (3)   The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>      (4)   There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

challenges only the fourth element of each paragraph, asserting the State failed to prove the children could not be returned to her custody at the time of the termination hearing. *See A.S.*, 906 N.W.2d at 473 (analyzing "at the present time" to mean at the time of the termination hearing).

There were a myriad of reasons the children could not be returned to the mother's care at the time of the termination hearing. Those reasons included the fact the mother had a no-contact order prohibiting her from having contact with child Da.M. after the mother pleaded guilty to child endangerment following an incident in which the mother encouraged Da.M. to commit suicide and the child followed through with an attempt.

Additionally, the mental-health and supervision needs of the children exceed the mother's ability to meet those needs. Although the mother has made some progress, as she stresses in her petition on appeal, the fact remains the mother still struggles to meet her own needs, even without the burden that is inherent in parenting. The mother is simply incapable of meeting the needs of the children at present.

Also, multiple children have experienced sexual abuse because of the mother's inability to properly supervise or protect them. Several children continue to engage in sexually explicit behavior and self-harm. We agree with the following observation made by the juvenile court: "[The mother] has not shown enough progress in her own mental health, her ability to identify unsafe individuals or her ability to set boundaries with her children to have any of these children return safely to her care now." The juvenile court correctly found the State met its burden of establishing statutory grounds for the termination of the mother's parental rights.

### 2. Additional Six Months

The mother also argues she should have been given an additional six months to work toward reunification. *See* Iowa Code §§ 232.117(5), 232.104(2)(b) (permitting the juvenile court to enter a permanency order giving the parents an additional six months to work toward reunification if the juvenile court decides not to terminate parental rights). The mother stresses she has done everything asked of her in the last few months before the termination hearing. However, she overlooks the fact that she and the family had been receiving intensive services for nearly two years at the time of the termination hearing, she had already been given six-month extensions with regard to two of the oldest children without the children being able to be returned home, and her progress was still in its infancy at the time of the termination hearing.

In order to warrant an extension of six months, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). This involves attempting to predict what that future holds for these children. To do that, "we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). Here, the past performance of the mother contributed directly or indirectly to physical and emotional harm to the children. The marginal progress the mother has made does not convince us that the need for removal will no longer exist after an additional six months. Therefore, we agree with the juvenile court's conclusion that the mother was not entitled to an

additional six months to work toward reunification when she had not made sufficient progress in the previous period of approximately twenty-two months.

## B. Father De.M.

Father De.M.'s rights to Av.M. were terminated pursuant to Iowa Code section 232.116(1)(f), and his rights to the two youngest children were terminated pursuant to Iowa Code section 232.116(1)(h). It is unclear what issues Father De.M. is raising on appeal, as the statement of the issues in the two divisions of his petition does not match the arguments that follow. Doing our best to determine what issues this father raises, we conclude the father is claiming the children could be returned to his care at the present time or he should have been given an additional six months to work toward reunification.

### 1. Statutory Grounds

This father appears to concede, as the mother did, that the State proved the first three elements under both section 232.116(1)(f) and (h). He focuses on the fourth element under those paragraphs, arguing the juvenile court erred in concluding the children could not be returned to his care at the time of the hearing. The only argument he makes in support of his claim is to note the DHS has determined the current residence of the mother and this father is "appropriate to raise children."

While it may be true that the mother and this father have corrected their prior shortcomings regarding the condition of their home, that does not resolve the issue at hand. There is much more to parenting than simply providing an appropriate physical structure within which the children can reside. Neither the mother nor this father has corrected the much more significant shortcomings in

their respective parenting abilities. This father had a mental-health crisis resulting in him becoming suicidal not long before the termination hearing. Police were called, as he threatened to jump from a bridge. While he has increased his mental-health treatment efforts, he waited until late in the proceedings to put in such efforts, as well over one year passed without noticeable effort. He has continued to allow people to live in the house who have not been approved by the DHS. Additionally, a few months before the termination hearing, this father struck the mother in the face during an argument, demonstrating that past concerns of domestic violence in the home have not been adequately addressed.

We agree with the juvenile court's conclusion that the children could not be returned to this father's care at the time of the termination hearing.

### 2. Additional Six Months

Of course, the same standards discussed with respect to the mother's request for an additional six months to work toward reunification apply to this father's request, so they will not be repeated here. For many of the same reasons the mother's request was properly rejected, this father's request also was properly rejected.

The sole basis urged in support of this father's request for an additional six months is the uptick in his attendance at therapy sessions during the six-month period leading up to the termination hearing. However, we are not persuaded this uptick, which occurred more than one year after services and offers of services were provided, will result in this father being in a position to resume custody of the children within the additional six-month period. For example, the incidents of this father making a suicidal threat to jump off a bridge and striking the mother in the

face, as described above, occurred during the height of his increased engagement with therapy. While the father may be making some progress, we are not convinced the progress shown demonstrates that sufficient progress will be made in the next six months that would allow the children to be returned to his care. Therefore, we agree with the juvenile court that this father should not have been granted an additional six months to work toward reunification.

## C. Father A.M.

Father A.M.'s parental rights to his children were terminated pursuant to Iowa Code section 232.116(1)(f). He raises four issues.

### 1. Statutory Grounds

Like the mother and Father De.M., Father A.M. concedes the first three elements of section 232.116(1)(f) were established by the State. He challenges the fourth element, asserting his children could have been returned to him at the time of the termination hearing.

On our de novo review, we agree with these findings by the juvenile court:

> The children would be subjected to further adjudicatory harm under Iowa Code [section] 232.2(6)(c)(2) and (n) if returned to [this father's] custody. [This father] had only been out of prison for one week at the time of the termination hearing. He had been incarcerated for roughly the past year, out of custody for the year prior, and also incarcerated the year before. He has not established yet that he will not engage in further violent acts or drug use in the community. He has not established stability in the community. He has not been in a caretaking role for these children in nearly four years. According to his testimony, [he] has never been in a caretaking role with these children while they have had the [mental-health] and behavioral issues that they now have. He has not demonstrated that he can provide for their special needs. [This father] and the children have not addressed the reports that [this father] sexually abused them. The children still associate [this father] with domestic abuse and abuse of their mother.

These findings contribute to our conclusion that the juvenile court correctly determined this father's children could not be returned to his care at the time of the termination hearing.

### 2.      Best Interests

Review of termination of parental rights proceedings under Iowa Code chapter 232 follows a three-step analysis, with each step having to be established before moving to the next: (1) determine whether any ground for termination under section 232.116(1) has been established; (2) determine whether the best-interest-of-the-child framework set forth in section 232.116(2) supports termination of parental rights; and (3) consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights.  *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016).  Having determined the State established a statutory ground for termination, we now proceed to this father's claim that termination was not in the children's best interests.

On this issue, the juvenile court again made factual findings with which we agree:

> Termination of [this father's] parental rights is in the children's best interest.  The children have lived in precarious, neglectful and traumatic circumstances for years.  [This father] has not either been able or willing to alleviate these conditions.  He has not exercised his parental rights to the children for their benefit.  It is true that, to varying degrees, the children have a relationship with [this father].  However, their relationship to him is wrapped up in their reports of sexual abuse and witnessing domestic abuse.  There is no reason to believe that [this father] will be able to provide a home for the children or to even have a healthy relationship with the children in the near future.  It is in the children's best interest for [this father's] parental rights to the children be terminated and for the children to move forward to permanent, safe, care-giving.

This father's claim that he has a stable home as a justification for finding that it is not in the children's best interests to terminate his parental rights is unpersuasive, as it is not supported by the record. This father has been in and out of prison over the past several years, demonstrating a tendency to continue to engage in criminal behavior. We are not persuaded that his one-week stint living with his mother after being paroled has established him as someone who has turned over a new leaf and offers stability to his children. We agree with the juvenile court's conclusion that termination of this father's parental rights is in the children's best interests.

### 3. Permissive Factors

Continuing with the three-step analysis, we turn to the final step. This father asserts the juvenile court erred in terminating his parental rights over the objections of the children. *See* Iowa Code § 232.116(3)(b) (permitting the court to deny a termination request if "[t]he child is over ten years of age and objects to the termination"). This father correctly acknowledges that the exception upon which he relies is permissive, not mandatory, so the court is not required to apply the exception even if it has been established. *See A.S.*, 906 N.W.2d at 475. This father also correctly acknowledges that not all of his children are eligible for the over-ten-years-of-age provision. Still, he argues termination should not be granted regarding any of his three children.

Even if all three of this father's children were over the age of ten, we would agree with the juvenile court that the exception should not be applied. This father criticizes the juvenile court's observation that the children did not articulate why they did not want this father's rights terminated and asserts the juvenile court was

merely speculating when it concluded the lack of specificity may be due to the children's mental health, age, and maturity. This father then engages in his own speculation, asserting their objections are most likely the result of the difference between the home environment they had been in at their mother's compared to that of this father.

In analyzing this issue, we are mindful that it is this father's burden to establish the permissive exception. *See id.* at 476. This includes not only proving the facts of the exception (i.e., that a child over ten years of age objects), but proving the exception warrants denial of termination. *Id.* (noting a relative had legal custody of the child—satisfying the facts of the exception of section 232.116(3)(a)—but then refusing to apply the exception because the parent "failed to meet her burden to establish that the grandparents' temporary custody of the child should preclude termination of [the parent's] rights"). We conclude this father has not met his burden. The lack of explanation of why the children objected coupled with this father's unstable past and long-term lack of involvement with the children convinces us that the juvenile court was right to refuse to apply this permissive exception.

### 4. Additional Six Months

Finally, this father asserts he should be given an additional six months to work toward reunification. We find the juvenile court properly denied this request. A prior six-month extension was already granted with regard to Na.M., even though this father was incarcerated at the time, to give the mother additional time to work toward reunification. This resulted in essentially a gift of additional time to this father while the mother was given time to gain some parental footing. The fact that

much of the additional time received by this father was lost to his continued incarceration does not compel the need for yet more time. While this father's incarceration in and of itself does not justify termination of his rights, the incarceration cannot be used as justification for his lack of relationship with the children. *See In re B.H.A.*, 938 N.W.2d 227, 234 (Iowa 2020) ("[A] [parent] cannot use his incarceration as a justification for his lack of a relationship with the child." (second alteration in original) (quoting *In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993))). Given this father's in-and-out-of-prison history coupled with his lifestyle involving drugs and violence that landed him in prison, we find no persuasive reason to believe the children could be returned to his care if he were given an additional six months, so we agree with the juvenile court that additional time was not warranted. These children have waited too long for a stable home and should not be required to wait any longer. *See C.K.*, 558 N.W.2d at 175 ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." (quoting *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987)).

## IV.    Conclusion

After our de novo review, we affirm the termination of the appealing parents' parental rights.

**AFFIRMED ON ALL THREE APPEALS.**